RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0182P (6th Cir.)
File Name: 02a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EDWARD WILHELM,
       *Plaintiff-Appellee,*

    *v.*

No. 00-4459

JOHN A. BOGGS, Deputy, and
JOSEPH TANNER, Deputy,
      *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 00-01029—David D. Dowd, Jr., District Judge.

Submitted: May 1, 2002

Decided and Filed: May 22, 2002

Before: SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

_____

**COUNSEL**

_____

**ON BRIEF:**  Thomas N. Michaels, OFFICE OF THE MAHONING COUNTY PROSECUTOR, Youngstown, Ohio, for Appellants.  David J. Gerchak, Boardman, Ohio, for Appellee.

_____

**OPINION**

_____

JOSEPH M. HOOD, District Judge.  Defendants appeal the district court's denial of defendants' motion for summary judgment on the basis of qualified immunity.  For the reasons that follow, we REVERSE and REMAND.

### I.  Factual History

It is axiomatic that "a defendant seeking to take an interlocutory appeal from the denial of qualified immunity 'should be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the case.'" *Booher v. N. Ky. Univ. Bd. of Regents*, 163 F.3d 395, 396 (6th Cir. 1998) (quoting *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998)).  In the instant case, plaintiff/appellee in his brief adopts the district court's recitation of the facts and concedes that the district court in its order construed the evidence "in the light most favorable to [him]."  Defendants/appellants also accept the undisputed facts as recounted by the district court:

This case grows out of a family dispute brought on by the death of Charles Wilhelm, father of the plaintiff. Charles Wilhelm died more than [five] years ago .... The plaintiff was the initial fiduciary for his father's estate, but was subsequently removed and his sister, Sherl Foster, was appointed as the administratrix of the estate of Charles Wilhelm.  The property at 4130 Crum Road in

concept of "common authority" as set forth in *Matlock*, which defines "common authority" as

the mutual use of the property by persons generally having joint control for most purposes so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their members might permit the common area to be searched.

*Matlock*, 415 U.S. at 172.  If *Roark* were generally applied, then, for example, an absentee landlord would have the ability to consent to the search of a tenant's residence.  That is not the law.  *See, e.g., Chapman v. United States*, 365 U.S. 610 (1961)(holding that a landlord cannot validly consent to the search of a house he has rented to another).  Because the issue before us is qualified immunity, rather than a direct challenge to *Roark*, we have no need to explore the matter any further in this case.

### IV. Conclusion

For the reasons expressed herein, the decision of the district court denying the defendants qualified immunity is **REVERSED** and the case is **REMANDED** for proceedings consistent with this opinion.

There, the Court held that "the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared." *Id.* at 170.

The Court took the notion of "common authority" one step further in *Illinois v. Rodriguez,* 497 U.S. 177 (1990), wherein the Court addressed a crucial issue expressly reserved in *Matlock*. The Court put that question as follows: "Whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact [does not]." *Id.* at 179. The Court answered in the affirmative.

This court, too, has had occasion to explore the concept of third-party consent - and under circumstances similar to those present by the instant case. In *United States v. Roark*, 36 F.3d 14 (6th Cir. 1994), defendant lived in a home owned by his sister, who lived in the primary residence located on the same property, but who testified that she lacked authorization to enter her brother's home without his permission. After defendant's sister consented to a search of the home in which defendant was living, police found substantial amounts of marijuana and defendant was arrested. Defendant pled guilty to illegal drug and firearm possession, but reserved his right to appeal the district court's denial of his motion to suppress. On appeal, this court first addressed whether, as an initial matter, defendant's sister possessed the authority to consent to a search of the home of which she was the owner but in which defendant resided. The court held that defendant's sister was so authorized. *Id.* at 17 ("[Defendant's sister], by way of her ownership or common control, had the authority to consent to the objectionable search.") The court reversed, however, on other grounds.

Although we hold that the sheriff's deputies are entitled to qualified immunity in light of *Roark,* this is not to say we are in agreement that *Roark* was correctly decided. *Roark* fails to provide a rationale for its departure from the Supreme Court's

Austintown [Ohio] is an asset of the estate of Charles Wilhelm. The plaintiff has resided in the Crum Road property since the death of Charles Wilhelm. Sherl Foster, in her capacity as administratrix of the estate, concluded that she needed to conduct an inventory at 4130 Crum Road and secured the cooperation of defendants Deputy Sheriffs Boggs and Tanner to assist in the inventory.

The essence of the plaintiff's case is that Boggs and Tanner violated his Fourth Amendment rights on December 15, 1999 by accompanying Foster to the Crum Road property and insisting upon the admittance of Foster to permit her to conduct the inventory.

The plaintiff alleges that the deputies insisted that they were there pursuant to an order of the Probate Court. The deputy sheriffs concede that there was no court order justifying their conduct, but they deny any wrongdoing based upon their sworn affidavits that the plaintiff gave consent to their entry into the Crum Road property. Alternatively, Deputy Sheriffs Boggs and Tanner contend that they are entitled to a dismissal of the plaintiff's claims based upon qualified immunity.

## II. Jurisdiction

In any appeal from a denial of summary judgment based on qualified immunity, an appellate court must first address the basic question whether jurisdiction is proper. This is so because interlocutory appellate jurisdiction over district court denials of qualified immunity does not always lie.

That district court denials of qualified immunity are "collateral orders" under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), was first made clear in *Mitchell v. Forsyth,* 472 U.S. 511 (1985). There, the United States Supreme Court held that a district court's summary judgment order is an immediately appealable "collateral order" where (1) the defendant is a public official asserting the defense of qualified immunity, and (2) the issue appealed concerns not which facts the parties might be able to prove, but, rather,

whether certain given facts reflect a violation of clearly established law. *Id.*

Later, in *Jones v. Johnson,* 515 U.S. 304 (1995), the Supreme Court further clarified that appellate jurisdiction over district court denials of summary judgment based on qualified immunity does not always lie, emphasizing that appellate jurisdiction is proper only where a district court's qualified immunity ruling involves questions of law. The Court held in *Jones* that, because "the order in question resolved a *fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial . . ., defendants cannot immediately appeal this kind of fact-related district court determination." *Id.* at 307. The Court went on to add that "the District Court's determination that the summary judgment record in [the] case raised a genuine issue of fact" rendered interlocutory appeal inappropriate. *Id.* at 313.

These considerations notwithstanding, however, it does not follow that the existence of *any* question of fact renders a denial of summary judgment on the basis of qualified immunity nonappealable. This principle was made clear in *Behrens v. Pelletier,* 516 U.S. 299, 312-14 (1996). There, the Supreme Court noted that "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable." *Id.* at 312-13 (citations omitted). The Court went on to make clear that "*Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity - typically, the issue whether the federal right allegedly infringed was clearly established." *Id.* at 313 (internal quotations omitted).

The principle that appellate jurisdiction lies when district court denials of summary judgment on the ground of qualified immunity turn on "abstract questions of law" was explained

in great depth by an en banc panel of this court in *Williams v. Mehra*, 186 F.3d 685 (6th Cir. 1999)(en banc). There, in reversing the lower court's denial of summary judgment on the basis of qualified immunity, this court first reiterated the well-settled rule that such denials of summary judgment are appealable so long as *"the issue on appeal is not what facts the parties may be able to prove, but whether the plaintiff's facts, taken at their best, show a violation of clearly established law."* *Id.* at 689 (citing *Johnson v. Jones,* 515 U.S. 304, 311 (1995)) (emphasis added). The court noted that *"regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the . . . appeal to the extent it raises questions of law." *Id.* at 689-90 (quoting *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir. 1996))(emphasis added)).

Applying these principles to the instant case, appellate jurisdiction exists. Although there remain controverted questions of fact, these facts are extraneous and irrelevant to the qualified immunity question. Fundamentally, there is no dispute as to the troika of critical facts serving as the basis for defendants' assertion of qualified immunity. Those facts are (1) the home at 4130 Crum Road was part of Charles Wilhelm's estate, (2) Sherl Foster was administratrix of Charles Wilhelm's estate, and (3) Sherl Foster not only consented to but in fact *requested* defendants' entrance to the home. These three facts considered together shape the legal issue not considered by the district court but now squarely before this panel: Is Sherl Foster's consent to (really, request for) defendants' entrance to be considered valid third-party consent such that plaintiff has, as a matter of law, failed to state a violation of clearly established law? If so, defendants are entitled to qualified immunity and the district court erred in denying defendants' motion for summary judgment.

### III. Analysis

The United States Supreme Court reaffirmed the principle of third-party consent to Fourth Amendment searches and seizures in *United States v. Matlock,* 415 U.S. 164 (1974).