Dennis W. TATE, Plaintiff–Appellee,

v.

COFFEE COUNTY, TENNESSEE, Defendant,

and

Steve Graves, individually and in his capacity as Sheriff of Coffee County, Tennessee; Paul Blackwell, individually and in his capacity as Jailer of Coffee County, Tennessee; Diana Casteel, individually and in her capacity as the Coffee County Jail Nurse, Defendants–Appellants.

No. 01–6304.

United States Court of Appeals, Sixth Circuit.

Oct. 4, 2002.

Before SILER, DAUGHTREY, and GILMAN, Circuit Judges.

OPINION

GILMAN, Circuit Judge.

Dennis W. Tate, at the age of 23, suffered a stroke while incarcerated at the

local jail in Coffee County, Tennessee. He subsequently brought suit against Sheriff Steve Graves, Jailer Paul Blackwell, and Nurse Diana Casteel (in both their individual and official capacities), and against the county itself. Tate alleges that the defendants were deliberately indifferent to his serious medical needs. The individual defendants filed a motion for summary judgment on the basis that they were entitled to qualified immunity, which the district court denied. For the reasons set forth below, we AFFIRM the judgment of the district court with regard to defendant Casteel, REVERSE the judgment of the district court with regard to defendants Blackwell and Graves, and REMAND the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual background

Tate was incarcerated in the Coffee County Jail on January 22, 1999, following his conviction for driving on a revoked license. He alleges that he repeatedly requested medical assistance during his three-month incarceration, but that these requests were frequently not answered in a timely manner or were ignored completely. The particular incident giving rise to this lawsuit began with Tate's written request to see Nurse Casteel on April 1, 1999. Tate completed the medical request form with the assistance of a fellow inmate and described his symptoms as follows: "Numbness and tingling feeling down the left side of the body. Can't get out of bed. More like paralysis; can't move about properly. No feeling in hand at present." Casteel stated in her deposition that, upon receiving Tate's written request, she suspected that he might have had a stroke.

There is a dispute about the length of time between Tate's medical request and when he was taken to Casteel's office.

Although Casteel's records show that he was seen on the day of his complaint, Tate recalls that he was not seen by her until the next day. Tate also claims that when he finally got to see her, she did not examine him or perform any diagnostic tests. Casteel disagrees, maintaining that she did examine Tate. Her records reflect that Tate was limping when he entered her office, but that his pupils were equal and responsive to light and that his grip was equally strong with both hands. She also claims that she checked Tate's pulse and blood pressure, both of which were within normal ranges, performed a neurological examination, and tested him for sensory loss. According to Casteel's notes, Tate told her that his limp was due to an automobile accident that he had been involved in three years earlier, and that one of his legs was shorter than the other.

Although Casteel's examination notes state that Tate declined an offer to go to the hospital, Tate denies that this option was presented to him that day or at any other time. Tate similarly disputes Casteel's records showing that she saw him again on April 5, 1999. Instead, Tate recalls that, after realizing that his release date was only 12 days away, he decided to remain in his cell until that time. Despite this decision, Tate submitted another written request to see Casteel a few days before his release. Casteel's notes indicate that she received the request on April 13, 1999. According to Casteel, she sent a corrections officer to bring Tate to her office that day, but Tate refused to see her because he was scheduled to be released the following day. Tate denies having any such meeting with a corrections officer on April 13. The next day, on April 14, 1999, Tate was released from the jail.

Tate was taken to a local hospital on the day of his release. The emergency room physicians determined that he had suf-

fered a stroke during his incarceration. Tate subsequently had a right carotid endarterectomy (a surgical procedure in which fatty deposits are removed from one or both of the two main arteries in the neck that supply blood to the brain) in June of 1999.

## B. Procedural background

This lawsuit was filed in the United States District Court for the Eastern District of Tennessee in January of 2000. Tate asserts claims under 42 U.S.C. §§ 1983 and 1988 for alleged violations of his rights under the Fourth and Fourteenth Amendments. More specifically, the complaint alleges that the individual defendants were deliberately indifferent to Tate's serious medical needs. With regard to Jailer Blackwell and Sheriff Graves, Tate asserts that they failed to (1) promulgate adequate policies to ensure the well-being of inmates in the jail and (2) provide adequate training and supervision to their subordinates.

The individual defendants responded by filing a motion for summary judgment, arguing that they are entitled to qualified immunity. In August of 2001, the district court denied the defendants' motion, concluding that genuine issues of material fact exist that preclude the grant of qualified immunity as a matter of law. This timely interlocutory appeal followed.

## II. ANALYSIS

### A. Jurisdiction

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In any appeal from a denial of summary judgment based on qualified immunity, an appellate court must first address the basic question whether jurisdiction is proper." *Wilhelm v. Boggs,* 290 F.3d 822, 824 (6th Cir.2002). The Supreme Court has held that such denials are immediately appealable where the issue is "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Johnson v. Jones,* 515 U.S. 304, 311, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Thus, this court has jurisdiction only to the extent that the defendants "concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Comstock v. McCrary,* 273 F.3d 693, 701 (6th Cir.2001).

The defendants in the present case state in their brief that they concede to all of the facts as alleged by Tate and are raising only legal issues on appeal. Yet they ignore Tate's assertion that Nurse Casteel failed to examine him or perform any diagnostic tests after receiving his April 1 medical request that detailed his stroke symptoms, and instead proceed as if her examination notes from that day are undisputed facts. To the extent that this factual dispute underlies the defendants' appeal, we lack jurisdiction. *Id.*

The only matter properly before us on appeal is whether the defendants' actions, as alleged by Tate, constituted deliberate indifference to Tate's serious medical needs. If so, the defendant's actions would violate the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, made applicable to the states through the Fourteenth Amendment. *Furman v. Georgia,* 408 U.S. 238, 241, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ("That the requirements of due process ban cruel and unusual punishment is now settled."); *Terrance v. Northville*

*Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002) ("It is well settled that the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment.") (alteration in original) (internal quotation marks omitted). As this court discussed in depth in *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999) *(en banc)*, "whether the [defendants] were deliberately indifferent is a mixed issue of law and fact.... The resolution of this question requires us to compare the [defendants'] conduct with a legal standard of deliberate indifference.... This analysis is in accord with the established standards of appellate review."

B. Deliberate indifference

A claim premised upon deficient medical care "has two components, one objective and one subjective." *Comstock*, 273 F.3d at 702. The objective element is satisfied if the plaintiff alleges "that the medical need at issue is 'sufficiently serious.'" *Id.* at 702–03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). As to the subjective component, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703. A prison official is therefore not held liable under the deliberate-indifference standard for simple negligence. *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970 (noting that deliberate indifference "describes a state of mind more blameworthy than negligence"); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

the Eighth Amendment."). The Court in *Farmer* further explained that "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970.

Proving that the defendant had a sufficiently culpable mental state to make him or her liable for deliberate indifference is a burden borne by the plaintiff. *Comstock*, 273 F.3d at 703. This burden can be met "in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970 (internal citation omitted).

C. Whether the facts as alleged by Tate could support a finding that Nurse Casteel was deliberately indifferent

In analyzing whether Casteel's actions as alleged by Tate meet the legal standard for deliberate indifference, we must first inquire whether the medical need at issue was sufficiently serious. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Casteel is not arguing that a stroke fails to meet this standard; indeed, it would be difficult to do so in good faith. Turning to the second prong of the deliberate-indifference test, we next ask if Casteel was subjectively aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and if she did in fact draw such an inference. *Id.* Casteel admits in her deposition that upon receiving Tate's medical request form reporting stroke-like symptoms, she suspected that he might have had a stroke.

Tate acknowledges that Casteel eventually saw him after he had complained of stroke symptoms, but claims that she failed to examine him or conduct any diag-

nostic tests at that time. Casteel's failure to examine Tate, which we must assume to be true for the purposes of this appeal, coupled with her admission that she suspected a stroke, supports the conclusion that she was subjectively aware of a serious risk and disregarded that risk. *Comstock*, 273 F.3d 693 (holding that allegations of a prison psychologist's "grossly inadequate" evaluation of an inmate who subsequently committed suicide, if proven, would constitute deliberate indifference to the inmate's serious medical needs as a matter of law, thus precluding summary judgment on qualified immunity grounds).

■ Once we have concluded that a plaintiff has alleged facts which, if true, would constitute the violation of a constitutional right, we must assess whether that right was clearly established at the time the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This inquiry requires determining whether a reasonable prison nurse would have known that the conduct in question was unlawful. The Supreme Court decided many years ago that the government has an "obligation to provide medical care for those whom it is punishing by incarceration," and that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citations omitted). Based upon this well-settled principle, we conclude that a reasonable prison nurse would have been aware that a failure to examine a patient complaining of stroke symptoms was in derogation of the inmate's constitutional rights.

Casteel argues that the fact that she saw Tate in her office precludes us from finding that she was deliberately indifferent to Tate's serious medical needs. She contends that her conduct, at worst, constituted nothing more than simple negligence. This court has previously held, however, that a medical professional's failure to perform any of the tests that would be routinely conducted under similar circumstances rises above the level of simple negligence and can support a finding of deliberate indifference. *Comstock*, 273 F.3d at 711.

## D. Whether defendants Blackwell and Graves were deliberately indifferent

■ Applying the above analysis to defendants Blackwell and Graves, we reach the opposite conclusion regarding their liability. Tate's allegations are insufficient to support a finding that either defendant subjectively perceived that Tate was at substantial risk for serious harm. He offers no evidence suggesting that they knew about his stroke symptoms or his repeated requests for medical assistance. Without this knowledge, there is no basis for finding that Blackwell or Graves were deliberately indifferent to Tate's serious medical needs.

Tate also alleges, however, that Blackwell and Graves should be held liable for his injuries because they failed to promulgate adequate jail policies and because they failed to properly train the jail staff. We recognize that these defendants could be held individually liable if their failure to promulgate adequate policies or failure to train reached the level of deliberate indifference to Tate's serious medical needs. *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76, 81 (6th Cir.1995) (holding that a prison supervisor can be held individually liable for failing to adopt and implement operating procedures "in the face of actual knowledge of a breakdown in the proper workings of the department"); *Redman v. County of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir.1991) (holding that where a

supervisor implements an unconstitutional policy, liability is direct, not vicarious). To establish such liability, Tate would have to show subjective knowledge on the part of Blackwell and Graves that the prison policy for responding to medical requests was inadequate and was putting the inmates at serious risk. But there is no evidence in the record to suggest that either defendant had the requisite subjective knowledge to hold them individually liable. *Farmer* 511 U.S. at 842, 114 S.Ct. 1970 (rejecting the argument that an objective test should be established for determining whether a prison official is liable under the Eighth Amendment).

As to the failure-to-train claim, this court has repeatedly held that "a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir. 1982). Tate has submitted no evidence suggesting that either Blackwell or Graves encouraged or directly participated in any deliberate indifference to Tate's serious medical needs through their training procedures.

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court with regard to defendant Casteel, REVERSE the judgment of the district court with regard to defendants Blackwell and Graves, and REMAND the case for further proceedings consistent with this opinion.