NOT FOR PUBLICATION
File Name: 07a0129n.06
Filed: February 15, 2007

No. 06-5570

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHRISTOPHER NELSON,

       Plaintiff-Appellee,

                                                 ON APPEAL FROM THE

v.                                     UNITED STATES DISTRICT
                                           COURT FOR THE WESTERN
MATTHEW RIDDLE and            DISTRICT OF KENTUCKY
THOMAS O. MOORE,
individually and in their
official capacities; CITY OF
CADIZ POLICE DEPARTMENT,

       Defendants-Appellants.
_____/

BEFORE:    GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

      **PER CURIAM.**   Appellants Matthew Riddle and Thomas O. Moore, appeal the district

court's denial of summary judgment on the basis of qualified immunity in Appellee Christopher

Nelson's § 1983 action alleging an illegal arrest arising out of a traffic stop in violation of the Fourth

Amendment. Appellants seek interlocutory review on this limited basis. For the following reasons,

we **REVERSE**.

**I.**

      At the time of the incident in question, August 2002, Nelson was twenty-three years old and

a recent graduate of the University of Illinois. He had recently returned to the Western Kentucky

area to live with his parents and search for employment. On the night of August 21-22, 2002, Nelson

left his parents' home on Old Hopkinsville Road in Trigg County, Kentucky, outside the city of

Cadiz, to visit friends and shop at the Wal-Mart in Hopkinsville. Nelson was in Hopkinsville from the early evening until after midnight. Upon leaving the Wal-Mart in Hopkinsville, Nelson drove westbound on US Highway 68 towards his parents' home outside Cadiz.

Cadiz police officers, Defendants Matthew Riddle and Thomas Moore, were parked next to each other in their marked patrol cars, driver's door to driver's door. A civilian "ride along" was in Moore's car. Both patrol cars were parallel to Highway 68, with Riddle's vehicle facing in an easterly direction and Moore's facing in a westerly direction. Nelson's car passed their position at about 1:30 a.m. Moore told Riddle that he did not think Nelson's car had a license plate. Both officers thought that Nelson's car also failed to have illumination over the license plate, as is required by Ky. Rev. St. § 186.170. Riddle followed Nelson.

Nelson turned left off of US Highway 68 onto Rocky Ridge Baptist Church Road at a short distance from where the officers were parked. Moore, who was watching, testified that just past that turn Nelson was perhaps 100 yards in front of Riddle. Riddle estimated that he caught up to Nelson within three quarters of a mile from the officers' original parked position.

Riddle testified that Nelson "cut the curve" on Rocky Ridge Road, which Riddle thought constituted erratic or reckless driving, that he switched on his patrol car's blue emergency lights and siren, radioed to his dispatcher that he had initiated a pursuit, and that Nelson was failing to stop. According to Hollis Alexander, Cadiz's Chief of Police, a police siren can clearly be heard in the background of the radio communication between Officer Riddle and the dispatcher.

Riddle stated that on a straight section of Rocky Ridge Road just past the curve that Nelson had "cut," he was as close as three car lengths to Nelson, but Nelson failed to stop in response to the blue lights and spot light Riddle had shined into Nelson's rearview mirror. Riddle testified that he had reached dangerously high speeds while chasing Nelson.

Nelson turned right onto Old Hopkinsville Road. Riddle, still about three car lengths behind Nelson, overshot the turn, and had to back up to resume his pursuit. Riddle testified that he was nonetheless able to keep Nelson in view, and that Nelson was driving erratically on Old Hopkinsville Road, crossing the center line of the highway and driving at a very high speed. Riddle said that Nelson's tail lights also went out, as if Nelson had purposefully switched them off.

Moore testified that when he heard the radio transmission, he joined the pursuit. He caught up to the pursuit on Old Hopkinsville Road. He stated that Riddle had his blue emergency lights turned on during the pursuit.

Nelson pulled into his parents' driveway off of Old Hopkinsville Road. Riddle testified that Nelson jumped out of his car, threw both arms into the air and yelled "what?!" Riddle said that Nelson had something in his hand and that Riddle told him to slowly place it on the ground. Riddle handcuffed Nelson. He thought Nelson was slow to react to verbal commands and had bloodshot eyes. He also thought that Nelson may have been under the influence of marijuana or methamphetamine, given his erratic driving and failure to stop in response to the police blue lights, and administered field sobriety tests. Nelson was able to stand on one foot but failed the "countdown" test by failing to follow instructions regarding the numeric countdown.[1] Nelson also failed the horizontal gaze nystagmus (HGN) test.

Riddle testified that he arrested Nelson for fleeing a police officer, in violation of Ky. Rev. Stat. Ann. § 520.095,[2] and driving under the influence. The DUI report indicates that the reason for

---

[1]Nelson allegedly failed the countdown test because he was instructed to count backwards from 39 to 17, and he counted back to 14.

[2]Ky. Rev. Stat. Ann. § 520.095 (West 1998) entitled, "Fleeing or evading police in the first degree," states that:

stopping the vehicle was "[i]nitially for a license plate violation," and "[s]econdly for reckless driving, fleeing or evading police, and DUI suspicion."

Nelson was taken to the local emergency room where a blood sample was drawn. He was then lodged in the Trigg County Jail for the remainder of the night. The blood tests were negative for alcohol or narcotics.

Nelson tells a different story. He claims that just west of the intersection of Highway 68 and Interstate 24, he observed two police cars sitting side-by-side. Nelson testified that when he saw the

---

(1) A person is guilty of fleeing or evading police in the first degree:
> (a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:
>
> . . .
>
> 2.      The person is driving under the influence of alcohol or any other substance or combination of substances in violation of KRS 189A.010;
>
> . . .
>
> 4.      By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property . . . .
>
> . . .

(2) Fleeing or evading police in the first degree is a Class D felony.

Ky. Rev. St. § 520.100, entitled "Fleeing or evading police in the second degree," provides as follows:

(1) A person is guilty of fleeing or evading police in the second degree when:
> . . .
> (b) While operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a recognized direction to stop his vehicle, given by a person recognized to be a peace officer.
. . .

(3)      Fleeing or evading police in the second degree is a Class A misdemeanor.

-4-

police cars he was driving 53 mph in a 55 mph zone. Nelson stated that he did not see emergency lights on the police cars until he got out of his car and Riddle shouted at him.

Nelson was placed in "deferred prosecution" for six months, and at the end of that period, no further crimes having been committed, the Trigg County Attorney dismissed the charges against him.

Nelson then brought this action against Moore and Riddle, in both their individual and official capacities. Defendants moved for summary judgment. The district court denied the motion. First, the court held that there was a genuine issue of material fact as to whether Riddle had probable cause to stop Nelson's vehicle. The district court reasoned that:

> While it is true that Kentucky law prohibits the operation of a motor vehicle without an illuminated rear license plate, neither Officer Moore nor Officer Riddle could determine whether Nelson's car was in fact lacking a proper license plate without further investigation. At that point, Officer Riddle could only have had reasonable suspicion that a non-moving traffic violation was occurring. The additional factors cited by Officer Riddle as justification for the ensuing pursuit include acceleration, cutting a curve, and the ambiguously described erratic driving.

The district court also rejected the officers' contention that they were entitled to qualified immunity. It reasoned that:

> The question of immunity in the instant case turns on whether a reasonable person in possession of the facts known by Officers Riddle and Moore would believe that the Plaintiff was violating KRS 186.170, 186.990(1). The Court has carefully reviewed the facts of the record and, as discussed herein-above, notes that several factual disputes exist central to the determination of whether Officers Riddle and Moore could have reasonably believed probable cause existed to arrest Nelson at any time during the pursuit and resulting events.

Defendants sought interlocutory review in this Court of that portion of the district court's order that denied summary judgment on the basis of qualified immunity.

**II.**

Defendants argue that their decision to arrest Nelson for the offense of fleeing or evading police should be protected by the doctrine of qualified immunity because Nelson never stopped his car in response to the officers' emergency lights and sirens as they pursued him, and it is not clearly established in a particularized sense that a police officer violates probable cause standards by arresting a motorist for failing to stop when signaled to do so.

Before addressing the merits of this argument, however, we must address the substantive and procedural doctrines which govern this type of appeal. Government officials performing discretionary functions are entitled to qualified immunity from suit for civil damages unless their actions have violated a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to show that a § 1983 defendant is not entitled to immunity from suit, a plaintiff must prove that (1) the facts as alleged by the plaintiff show a violation of a constitutional right; and (2) such right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

A district court's denial of a defendant's claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision within 28 U.S.C. § 1291 under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). However, *Mitchell* is limited to appeals challenging purely legal issues of whether the alleged facts amounted to a constitutional violation and whether the constitutional right was clearly established. It does not apply to a district court's determination about what factual issues are genuine and triable. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). That is, "summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity–typically, the issue whether the federal right allegedly infringed was clearly established." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Thus, "'in order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only

the legal issues raised by the case.'" *LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)). *see also Wilhelm v. Boggs*, 290 F.3d 822, 824-25 (6th Cir. 2002) (discussing standards); *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc) (same).

Finally, "regardless of the district court's reasons" for the denial of qualified immunity, this Court may exercise jurisdiction over the appeal to the extent it raises questions of law. *Williams*, 186 F.3d at 689-90 (citations omitted).

This Court reviews the district court's grant or denial of summary judgment *de novo*, under Fed. R. Civ. P. 56(c). *Id.* at 689. Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In resolving this question, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Williams*, 186 F.3d at 689. A non-movant must show sufficient evidence to create a genuine issue of material fact. *Id.* A "mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant.]'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

This Court reviews mixed questions of law and fact *de novo. Id.* A district court's "findings of ultimate facts based upon the application of legal principles to subsidiary facts are subject to *de novo* review." *Id.* Thus, a district court's denial of qualified immunity, a mixed question of law and fact, is reviewed *de novo. See Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006), *petition for certiorari filed*, 75 USLW 3065 (July 31, 2006) (No. 06-171).

In this case, Defendants acknowledge the district court ruled that a question of fact existed as to whether Defendants had probable cause to arrest Nelson. However, they claim that the district

court erroneously held that the question of immunity turned on whether a reasonable person in possession of the officers' knowledge would have believed that Nelson was violating Ky. Rev. St. § 186.170 and Ky. Rev. St. § 186.990, which require that license plates on motorists' vehicles be illuminated. Defendants contend that the focus should instead be on the officers' decision to arrest Nelson for "fleeing from the police" in violation of Ky. Rev. St. § 520.095 and Ky. Rev. St. 520.100. They assert that, in the latter context, the uncontested facts are that Nelson failed to pull over and stop when signaled by Riddle. They argue Nelson's assertion that he "never knew" the officers were pursuing him is irrelevant in this § 1983 analysis, and that the pure legal issue to be decided is whether Defendants were clearly on notice that their decision to arrest Nelson for fleeing or evading when he failed to stop would be unlawful.

It is beyond question that in August 2002, Nelson had a clearly established Fourth Amendment right to be free from arrest without probable cause. *See Beck v. Ohio*, 379 U.S. 89, 90-91 (1964); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). It is also true that if, *in fact*, Nelson failed to stop *when signaled*, Defendants had probable cause to arrest.[3]

Thus, the ultimate fact in this case–whether Defendants had probable cause to arrest Nelson for failing to stop–turns on the subsidiary or basic fact of *whether and when Defendants signaled him to stop. See generally Williams*, 186 F.3d at 690 (explaining that the issue of ultimate fact, which requires this Court to compare the defendants' conduct with a legal standard, is distinguishable from issues of subsidiary or basic fact, which concern what actions the defendants performed). To answer

---

[3]Nelson does not otherwise argue that a violation of Ky. Rev. St. § 520.095 and Ky. Rev. St. § 520.100 would not give rise to probable cause.

this question, we must view the factual evidence and draw all reasonable inferences in Nelson's favor.[4] *See Williams*, 186 F.3d at 689.

Defendants contend that Nelson's testimony that he "never knew they were there, or behind me," fails to rebut the officers' testimony that they pursued Nelson with emergency lights and sirens of their patrol cars activated and that Nelson failed to stop. We agree.

Nelson never unequivocally stated that the emergency lights were not on prior to the time he got out of his car and Riddle shouted at him, but consistently couched his answers in terms of his "subjective awareness," which as Defendants assert is irrelevant in assessing what a reasonably objective police officer would have believed. One exchange is particularly telling:

> Q:    Okay. So tell me if I'm wrong then. If that's your recollection, then your testimony is that the police officers–that Officer Riddle did not have his emergency or blue lights on as he followed you.
> A:    I never knew if he was following me.

Further, Nelson never asserted in his complaint that the lights were not on (prior to his arrival at his parents' home) and does not make this assertion on appeal either. Thus, "the best inference available to [Nelson] is that he was simply unaware of Appellants' efforts to get him to stop his car," which does not rebut Defendants' unequivocal testimony that they signaled him prior to his stopping at his parents' home and that he failed to respond. Nelson therefore failed to meet his burden of producing more than "a mere scintilla of evidence" on which the jury could find for him. *See Williams*, 186 F.3d at 689.

In sum, this Court holds that Nelson did not meet his burden of showing that the defendants are not entitled to qualified immunity. *See Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). For

---

[4]Rather than "conceding to facts as alleged by the plaintiff," *see Marbe*, 266 F.3d at 365, Defendants contend that those facts are irrelevant, because Nelson failed to stop when signaled.

these reasons, we need not rely on the district court's incorrect focus on the alleged violations of Ky. Rev. St. § 186.170 and Ky. Rev. St. § 186.990.

**III.**

For the foregoing reasons, we hold that Defendants Riddle and Moore are entitled to qualified immunity, and **REVERSE** the order of the district court denying them qualified immunity, and **REMAND** for further proceedings consistent with this opinion.

**Ralph B. Guy, Jr., dissenting.** As the majority acknowledges, for this court to have jurisdiction over an interlocutory appeal from the denial of qualified immunity, the defendant must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). Defendants argue that, whatever else may be disputed, the evidence demonstrated probable cause to arrest plaintiff for fleeing or evading an officer. Fleeing or evading requires that a person operating a motor vehicle with intent to elude or flee, must knowingly or wantonly disobey a direction to stop the vehicle given by a person recognized to be an officer. KY. REV. STAT. §§ 520.095 and 520.100. To be sure, Nelson did not stop his car until he parked it in his driveway. For probable cause, however, the material question is whether a reasonable officer would have believed that Nelson's failure to stop was a knowing disregard of a recognized officer's signal to stop. In other words, would a reasonable officer have believed Nelson was or should have been aware of Riddle's attempt to stop him.

If Riddle's testimony is to be believed, Nelson failed to stop even though an officer in a marked car activated his lights and siren, came within three car lengths of the car during the high-speed pursuit, and directed a spotlight into the back window of Nelson's car. This would undoubtedly establish probable cause. Defendants argue there can be no question of fact because Nelson did not (and for that matter could not) testify that Riddle's lights were not on. On that issue, Nelson said all that he could under the circumstances—that he did not *see* Riddle's lights or the police car until after Riddle pulled into his driveway. As I see it, this misses the crux of the case.

Nelson argued that the most favorable view of all the evidence permits an inference that Riddle did not come close enough to Nelson's car during the pursuit for a reasonable officer to believe Nelson knowingly disobeyed a recognized officer's signals to stop. That evidence includes testimony that the sight lines were short on the curvy, hilly, poorly lit roads over which the two-mile

-11-

pursuit was conducted. There is no dispute that Nelson had a head start, and that Riddle only initiated pursuit after observing Nelson going into a sharp curve. Even Officer Moore testified that he could not see Riddle's patrol car until he approached the scene outside plaintiff's residence on Old Hopkinsville Road. To this is added Nelson's testimony that he had to slow to nearly a stop in order to make the sharp turn onto Old Hopkinsville Road—a turn that Riddle admittedly overshot. From that, Nelson argues that if Riddle had been following close enough for his lights to be seen, then Riddle should also have seen Nelson's brake lights and would not have missed the turn himself. In addition, Nelson specifically averred by way of affidavit that there was a delay of 30 to 45 seconds between the time that he arrived in the driveway of his home and when Riddle pulled into the driveway behind him. This, Nelson argues, supports his claim that Riddle was not close enough during the pursuit for a reasonable officer under the circumstances to believe that Nelson had knowingly or wantonly disobeyed a recognized officer's signal to stop.

Because I believe the disputed facts concerning the pursuit create a question of fact whether there was probable cause to arrest Nelson for fleeing or eluding an officer, I would affirm the denial of qualified immunity on Nelson's claim that he was arrested without probable cause.